UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACK ROBERTS, individually and on behalf of others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-3617-B |
| S.B. SOUTHERN WELDING, L.L.C. and SHANE BOSTON, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Jack Roberts' Expedited Motion to Conditionally Certify Collective Action and Authorize Notice (Doc. 28), filed on June 9, 2015. For the reasons that follow, the Court **GRANTS** the Motion.

## I.

## BACKGROUND

This case arises out of a Fair Labor Standards Act (FLSA) claim for unpaid overtime compensation. Jack Roberts ("Roberts"), a former rig welder for Defendant S.B. Southern Welding, L.L.C. ("Southern Welding"), filed his Complaint in this case on behalf of himself and all others similarly situated. Doc. 1, Compl. ¶¶ 1–3. Roberts alleges that Defendants improperly classified him, along with other workers,[1] as an independent contractor rather than an employee so as to avoid the

---

[1] Whether Roberts and the other putative class members are "employees," as that term is relevant to an FLSA claim, is a matter of dispute. That determination, however, turns on the merits of the case, and is thus not appropriate at this preliminary stage. The Court will therefore use the neutral term "worker" to describe Roberts and the putative class members to avoid the appearance that it has improperly decided that

FLSA's overtime pay requirements. *Id.* ¶¶ 29–31. Through his personal interaction with other welders, Roberts allegedly discovered that Defendants' practice of paying workers on an hourly basis, regardless of the number of hours they worked, was widespread. *Id.* ¶¶ 32–33. He seeks unpaid overtime compensation, liquidated damages, and attorney's fees and costs. *Id.* ¶¶ 66–68.

In the Motion, Roberts moves the Court to conditionally certify his case as a collective action and to authorize notice to other potential class members of their ability to opt-in. Doc. 28, Pl.'s Mot. to Certify 1. Defendants responded on June 29, 2015, voicing their opposition to conditional certification. Doc. 29, Defs.' Resp. in Opp'n. As Roberts has now replied, *see* Doc. 31, the Motion is ready for review.

## II.

## LEGAL STANDARD

The FLSA permits a plaintiff to file a lawsuit against an employer to recover unpaid overtime compensation on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). A plaintiff filing on behalf of co-employees must certify the class action; the other employees may join the suit by affirmatively opting into the class. *See Stiles v. FFE Transp. Servs., Inc.*, No. 09-CV-1535, 2010 WL 935469, at *1 (N.D. Tex. Mar. 15, 2010). "FLSA collective actions are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged activity." *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010) (internal quotation marks and alterations omitted).

---

issue at this time.

"When a plaintiff seeks to bring a collective action, a district court can in its discretion facilitate notice to potential plaintiffs of their right to opt-in to the suit." *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 515 (N.D. Tex. 2014). The Fifth Circuit has not adopted a specific test for deciding when to exercise that discretion; it has, however, noted that "collective actions typically proceed in two stages." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). In the first stage, conditional certification is appropriate where "plaintiffs have provided sufficient evidence of similarly-situated potential plaintiffs to warrant court-facilitated notice." *Behnken*, 997 F. Supp. 2d at 516. In the second stage, "the court reexamines the class after notice, time for opting-in, and discovery have taken place, typically in response to defendant's motion," and "[i]f the court finds that the class is no longer made up of similarly-situated persons, it decertifies the class." *Id.*

This case is currently in the first stage—the request for conditional certification. At this point, Roberts must show that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Tolentino*, 716 F. Supp. 2d at 647. Because a court often has minimal evidence at this stage, the decision is "usually based only on the pleadings and any affidavits which have been submitted." *Id.* Indeed, courts generally "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91 (2003). Courts employ a lenient standard during the first stage, and the analysis typically results in the conditional certification of a representative class. *Lentz*

*v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 668 (N.D. Tex. 2007). That being said, a "factual basis for the allegations must be presented, and there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Tolentino*, 716 F. Supp. 2d at 647 (citation omitted). If the court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in, and the action "proceeds as a representative action through discovery." *Mooney*, 54 F.3d at 1214.

### III.

### ANALYSIS

The Court reviews the parties' filings and the attachments thereto in light of the three-part test articulated above. To prevail on his Motion, Roberts must make a sufficient showing under all three. The Court will analyze each part individually.

A.     *Existence of Aggrieved Co-Workers*

In his Complaint, Roberts alleges that Defendants misclassified him as an independent contractor—rather an employee—and, as a result, failed to compensate him for his overtime work at the proper time-and-a-half rate. Doc. 1, Compl. ¶¶ 29–30. Furthermore, according to Roberts, Defendants similarly misclassified and underpaid "[d]ozens of other welders." *Id.* ¶ 31. He claims personal knowledge of this fact. *Id.* ¶ 32. To support this allegation, Roberts has submitted the declarations of several other individuals who worked for Defendants, all of whom claim to have had the same experience. *See* Doc. 28-2, Decls. 8–15. Roberts has also provided "invoices," which are essentially receipts for work performed for Defendants. Doc. 31-2, Invoices 11–16. These invoices, belonging to Roberts and five other individuals, show that each was paid at an hourly rate, despite

working over forty hours in each week recorded.[2] *Id.*

The pleadings and submissions in this case thus allege that Defendants implemented the same policy of misclassification and underpayment with respect to many of their workers. The declarations also indicate that there were often up to thirty other workers on those same projects for which Roberts and the putative class members allege they were underpaid for overtime work. *See, e.g.*, Doc. 31-2, Decl. of Jack Roberts ¶ 13; Decl. of Todd Layton ¶ 13. Accordingly, the Court concludes that there is a sufficient basis to "credit[] the assertion that aggrieved individuals exist." *Tolentino*, 716 F. Supp. 2d at 647.

B.   *Co-Workers are Similarly Situated to Roberts*

Defendants argue that Roberts is not similarly situated to the putative class members for three reasons. First, Roberts' job responsibilities differed from those of the putative class members. Doc. 29, Defs.' Resp. 10–13. Second, because Roberts and the opt-in plaintiffs[3] have not worked for Defendants since 2013, they cannot be similarly situated to any individuals who worked for Defendants after that time. *Id.* at 13–14. Third, Roberts has presented insufficient evidence of a widespread discriminatory plan. *Id.* at 17–19.

1.   <u>Roberts' Job Responsibilities</u>

Roberts is a rig welder, and the Complaint refers only to other welders. *See* Doc. 1, Compl.

---

[2] Of these invoices, three specifically identify Southern Welding as the payor. *See* Doc. 31-2, Invoices 11–13. For the other three, the Court relies on Roberts' allegations that the work recorded was performed for Defendants. *See* Doc. 31, Pl.'s Reply 5; Doc. 31-2, Invoices 14–16.

[3] This term refers to the individuals who have filed consent forms to opt-in to this case. *See* Docs. 5, 12, 16, 20. They are not yet plaintiffs, however, because Roberts has not joined them as such. Furthermore, because the Court has not yet certified the class, there is nothing for them to opt-in to at present. The term "opt-in plaintiffs" is therefore shorthand only, and is not meant to indicate that these individuals are parties to the litigation.

¶¶ 31–32. Defendants assert, however, that several putative class members, including some of those who submitted declarations, are not welders; rather, they work as "single hands" or "safety watchmen." Doc. 29, Defs.' Resp. 12. Roberts does not deny this fact, and instead argues that the differences in job responsibilities are not material to the class claims. Doc. 31, Pl.'s Reply 5–6. Alternatively, Roberts seeks conditional certification for the three sub-groups. *Id.* at 6–7. Defendants also claim that Roberts' job responsibilities were unlike those of other welders during the time he worked for them, and therefore he is dissimilarly situated to those welders as well. Doc. 29, Defs.' Resp. 11–12.

          i.      *Welders, single hands, and safety watchmen*

To prevail on his Motion, Roberts must show that he is similarly situated to the class members he seeks to represent. "[P]otential class plaintiffs are considered 'similarly situated' to the named plaintiffs if they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Tolentino*, 716 F. Supp. 2d at 649–50 (internal quotation marks and citation omitted). "The positions need not be identical, but similar." *Id.* Workers can be similarly situated despite different job responsibilities, unless those distinctions "affect . . . the facts that are material to plaintiffs' claim." *Behnken*, 997 F. Supp. 2d at 522. "[T]he relevant inquiry is whether there is 'a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].'" *Vazzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (quoting *Crain v. Helmerich and Payne Int'l Drilling Co.*, No. 92-0043, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)).

According to Defendants, welders, single hands, and safety watchmen all perform different

kinds of work. Rig welders perform "welding, flame cutting (with a torch), and fabricating." Doc. 30-6, Decl. of Shane Boston ¶ 5. Such welders are "highly skilled, require minimum supervision, and provide their own tools as needed for the job." *Id.* Rig welders must also provide their own truck, which has to meet certain requirements. *Id.* Single hands, by contrast, do not perform welding services, but instead perform other mechanical work. *Id.* ¶ 6. This work includes "turning wrenches, blade grinding, replacing belt conveyors, [and] painting." *Id.* Single hands need not provide their own trucks, but they are obligated to bring a bucket of tools to the job site. *Id.* On average, single hands make $15 less per hour than welders. *Id.* Safety watchmen perform neither welding nor mechanical work, and are only responsible for "monitor[ing] the safety of the individuals performing services at the job site." *Id.* ¶ 7.

These are distinctions. But the Court is not persuaded that they are material to Roberts' and the putative plaintiffs' claims. The declarations establish that Defendants' alleged plan to misclassify and underpay their workers applied to individuals in all three jobs. *See* Doc. 28-2, Decl. of Jack Roberts ¶¶ 3, 8 (welder); Doc. 28-2, Decl. of Arthur Richardson ¶¶ 3, 7 (single hand); Doc. 28-2, Decl. of Bryan Dubeansky ¶¶ 3, 7 (safety watchman).[4] Furthermore, Defendants assert defenses that apply largely to all potential plaintiffs, such as the statute of limitations and that Roberts and the putative class members "are not employees under the FLSA." Doc. 6, Defs.' Ans. ¶¶ 72, 75. Of their defenses that appear personal to Roberts, only one potentially derives from Roberts' different job responsibilities—that Roberts was statutorily exempt from the overtime requirements of the FLSA.

---

[4] Richardson does not identify which job he performed for Defendants in his declaration, and Dubeansky states that he worked as a "safety supervisor." Doc. 28-2, Decl. of Bryan Dubeansky ¶ 2. Defendants concede, however, that Richardson worked as a single hand and Dubeansky was a safety watchman. Doc. 29, Defs.' Resp. 12; Doc. 30-6, Decl. of Shane Boston ¶¶ 11, 22.

*Id.* ¶ 74 (citing 29 U.S.C. § 213(b)(1)). Defendants have not elaborated on this supposed exemption, however, and do not mention it as a distinguishing factor in their Response. Consequently, the Court cannot agree that the different job responsibilities, standing alone, render the three categories of workers dissimilarly situated. Rather, it is sufficient that "they were compensated under the same regimen" allegedly "infected by discrimination," even if "their duties may have differed." *Aguilar v. Complete Landsculpture, Inc.*, No. 04-CV-0776, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (finding that foremen and laborers in landscape architecture business were similarly situated for the purpose of conditional certification under FLSA despite differences in pay and job responsibilities).

Defendants' reliance on *Harris v. FFE Transportation Services, Inc.*, No. 05-CV-0077, 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006), is misplaced. There the Court was engaging in a second-stage, rather than a first-stage, analysis. *Id.* at *8. Unlike the instant case, the parties in *Harris* had completed seven months of discovery, and so the Court conducted a "more stringent" similarly-situtated inquiry than is appropriate here. *Id.* at *7–8. Based on the parties' limited submissions to this point, Roberts has alleged a sufficient "factual nexus" to bind himself and the putative plaintiffs as victims of the same policy. *Vazzini*, 995 F. Supp. 2d at 720. The Court therefore finds that Defendants' rig welders, single hands, and safety watchmen are "similarly situated" to one another under the FLSA.

        ii.     *Roberts and the other welders*

Next, the Court must decide whether Roberts, as an individual, is similarly situated to the rig welders he seeks to represent. Defendants contend that he is not, and they point to several ways in which Roberts differed from their average rig welder. First, Roberts worked as a foreman for about a month in 2011, during which time he managed shop employees and welders and earned $1,500 per

week. Doc. 30-6, Decl. of Shane Boston ¶ 9. Roberts later resigned as a foreman to become a rig welder, but he also worked as a contract project manager from June 2012 until September 2013. *Id.* Roberts acted in a supervisory capacity in this role and also "drove a company truck and used a company phone." *Id.* Roberts' experiences during this time were, according to Defendants, "unique for a rig welder." *Id.*

As with the distinctions between welders, single hands, and safety watchmen, the Court does not believe that Roberts' additional duties make him dissimilarly situated to other rig welders who worked for Defendants. Defendants have not established that Roberts did not perform the same work as other rig welders; at best, they have shown only that he performed *more* work. As far as the Court can tell, Roberts still worked as a rig welder during this time. He also just happened to be a supervisor. Moreover, Defendants do not assert any unique defenses that arise from the fact that Roberts worked as a foreman for a month or that he drove a company truck. Accordingly, the Court finds that these are likewise distinctions without a difference, and that Roberts is similarly situated to Defendants' other rig welders during the period of his employment.

2.  Defendants' Workers After 2013

According to Defendants, neither Roberts nor the opt-in plaintiffs worked for Defendants after 2013. Doc. 29, Defs.' Resp. 13–14. Therefore, Defendants argue, none of them "can . . . have firsthand knowledge regarding Defendants' policies and procedures after they left the company." *Id.* at 14. This lack of firsthand knowledge in turn means that Roberts and the opt-in plaintiffs cannot establish that they are "similarly situated to any putative class members that performed services for Defendants in the years since [their] departure." *Id.* Conversely, Roberts asserts that the fact that he and the opt-in plaintiffs have not worked for Defendants since 2013 is "inconsequential to the

analysis" because Defendants have admitted that their current workers perform the same kind of work that he did. Doc. 31, Pl.'s Reply 2. Roberts contends that he may therefore be similarly situated to any individuals who worked for Defendants since the time Roberts began working there, including current workers. *Id.*

Neither party is completely correct. On the one hand, Roberts and the opt-in plaintiffs have stated that they often performed jobs with many other workers who were subject to the same compensation regime. These workers would be similarly situated to Roberts even if Defendants subsequently changed their alleged policy. On the other hand, without personal knowledge of Defendants' compensation policies after he left, Roberts cannot claim to be similarly situated to any individuals who did not work for Defendants during the time that Roberts did. *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) ("Although the Court does not require Plaintiffs to present evidence that would meet all of the requirements of Rule 56(e), the Declarations must be based on personal knowledge." (emphasis omitted)). Roberts may, therefore, be similarly situated to individuals who worked for Defendants after 2013, but only those who also worked contemporaneously with him.

### 3. Widespread Discriminatory Plan

In arguing that Roberts has not provided sufficient evidence of a widespread discriminatory plan, Defendants rely heavily on *Harris* and *Stiles*. *See* Doc. 29, Defs.' Resp. 17–19. These cases counsel against certifying a collective action when a plaintiff has put forward nothing more than vague, conclusory statements of a common plan or a mere belief that other workers were similarly discriminated against. *Stiles*, 2010 WL 935469, at *3; *Harris*, 2006 U.S. Dist. LEXIS 51437, at *13. Roberts disputes this alleged insufficiency, pointing to the "specific details about . . . pay violations"

contained in the declarations and timesheet and payroll records recently obtained from Defendants. Doc. 31, Pl.'s Reply 4–5.

*Harris* and *Stiles* are both distinguishable from the present case. As the Court has already noted, *Harris* involved a second-stage inquiry conducted after extensive discovery regarding the similarly situated issue. The fact that the Court found a mere belief in a discriminatory pay policy to be insufficient at that stage does not necessitate the same conclusion during the lenient first stage. Notably, though, Roberts does not rely on a mere belief. Instead, he has offered the declarations of several of Defendants' workers, all of whom attest to the same experiences, in addition to documentary evidence of Defendants' compensation practices. These submissions go far beyond a simple belief that "other workers were discriminated against in similar ways." *Harris*, 2006 U.S. Dist. LEXIS 51347, at *13. *Harris* is inapposite.

The Court likewise finds that *Stiles* does not control the outcome of this case. Though the declarations in this case bear some resemblance to the ones that this Court found inadequate in *Stiles*, the decision in that case was the product of other considerations as well. *See Stiles*, 2010 WL 935469, at *3. The Court there was concerned that, of the four potential opt-in plaintiffs, none had submitted an affidavit or even manifested a desire to opt-in to the case. *Id.* As a result, the Court was faced with the prospect of certifying a collective action without any meaningful indication that it would garner support beyond the two named plaintiffs. This case presents no such difficulty: there are no fewer than twelve opt-in plaintiffs, each of whom has already consented to participate in the action, should it be certified. *See* Docs. 5, 12, 16, 20. The Court therefore rejects Defendants' argument and finds that Roberts has adduced sufficient evidence of a widespread discriminatory plan to show that he is similarly situated to the putative class members he seeks to represent.

C.   *Co-Workers' Desire to Opt In*

Roberts' final hurdle is to demonstrate that other workers want to opt-in to the instant action.[5] Defendants offer two grounds for finding that Roberts has failed to carry this burden: first, he has not identified any potential plaintiffs; and second, he has not provided any affidavits from potential plaintiffs. Doc. 29, Defs.' Resp. 15–16. Roberts contends that specific identification and affidavits are not necessary for the Court to conditionally certify his collective action. Doc. 31, Pl.'s Reply 3–4.

The Court disagrees with Defendants' assertion that, "[d]espite the fact that this case was originally filed over a year ago, Plaintiffs fail to identify any additional plaintiffs who desire to join this lawsuit." Doc. 29, Defs.' Resp. 15 (emphasis in original). As the Court has already explained, there is only one plaintiff in this case—Roberts. The opt-in plaintiffs are simply prospective litigants at this point. This means that Roberts has, in fact, specifically identified twelve additional plaintiffs who want to join this lawsuit.

More importantly, though, the requirement that a litigant identify potential plaintiffs does not exist simply for its own sake. A plaintiff's identification of other potential plaintiffs is relevant to the certification analysis because it provides "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008). It also demonstrates that there might be other workers who desire to opt-in to a collective action. *See Stiles*, 2010 WL 935469, at *3.

---

[5] Some courts reject the requirement that a plaintiff show that similarly situated, aggrieved workers would desire to opt-in to the lawsuit. *See, e.g., Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010). Because the Court concludes that Roberts has made a sufficient showing on this issue, however, it need not decide whether the requirement is valid under the FLSA.

Therefore, even if the Court considered the opt-in plaintiffs to be actual plaintiffs in deciding this Motion, their presence in the litigation serves the same purpose that an identification of potential plaintiffs would. It would be absurd to say that merely identifying potential plaintiffs evinces their desire to opt-in, but their actual consent to opt-in does not.

Regarding Defendants' second argument, the Court observes that the submission of affidavits from potential plaintiffs is not an invariable prerequisite to conditional certification. *See Tolentino*, 716 F. Supp. 2d at 653. Nonetheless, Roberts has submitted several declarations in support of his Motion—those of the opt-in plaintiffs. Whether the Court treats these individuals as plaintiffs or potential plaintiffs is ultimately immaterial, because the submission of affidavits serves the same purposes as the identification of potential plaintiffs. *See Songer*, 569 F. Supp. 2d at 707. For the same reasons, then, the Court concludes that Roberts has adequately shown that other, similarly situated workers desire to opt-in to his case. He has therefore cleared the final hurdle, and conditional certification of a collective action is appropriate at this time.

D.    *Roberts' Proposed Notice*

Roberts has also requested court-facilitated notice to other potential plaintiffs and has provided a proposed "Important Notice to Workers at S.B. Southern Welding, L.L.C." Doc. 28-2, Proposed Notice 2–5. Defendants argue that Roberts' proposed notice is overbroad and does not neutrally assess the litigation, and request ten days to file objections and a proposed notice of their own. Doc. 29, Defs.' Resp. 19. In light of the Court's decision to conditionally certify Roberts' collective action, it will grant Defendants' request and will consider any submission from them before authorizing notice.

IV.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion to Conditionally Certify Collective Action. The Court does not authorize notice at this time, but **ORDERS** Defendants to file their objections and proposed notice on or before **November 2, 2015**.

**SO ORDERED.**

**SIGNED: October 21, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE